# FEDERAL DEFENDER SERVICES OF WISCONSIN, INC.

LEGAL COUNSEL

Craig W. Albee, Federal Defender
Krista A. Halla-Valdes, First Assistant

Joseph A. Bugni, Madison Supervisor
Elizabeth Blair
John W. Campion
Jessica Arden Ettinger
Anderson M. Gansner
Jonathan Greenberg
Gabriela A. Leija
Dennise Moreno
Ronnie V. Murray
Tom Phillip
Joshua D. Uller
Alex Vlisides
Kyle Kent, Diversity Fellow

22 East Mifflin Street
Suite 1000
Madison, Wisconsin 53703

Telephone 608-260-9900
Facsimile 608-260-9901

February 9, 2023

Honorable William M. Conley
United States District Judge
120 North Henry Street
Madison, Wisconsin 53703

   Re: *United States v. Matthew Peeples*
      Case No. 22-cr-14-wmc

To the Honorable William M. Conley,

  In anticipation of sentencing and in support of a ten-year sentence, the defense files this memo with attached letters.

  There are three traditional aims of sentencing—deterrence, protection of the public, and just punishment. The parties' agreed range has Peeples imprisoned for at least a decade and at the most fifteen years. Given that range, the defense submits that deterrence and protection of the public are fully accomplished by a sentence of ten years—nothing more is accomplished in years eleven and twelve that wouldn't be accomplished by a ten-year sentence. A decade in prison for a person who has never even been to jail is more than enough time to deter Peeples from future criminal conduct. And continued supervision and therapy will ensure the public's protection, far beyond additional years in prison. Thus, the question becomes: what is just punishment for Peeples's crime?

That, of course, is a much harder question and that takes balancing the individual and the offense. For over forty years, Peeples has all the markings of an exemplary life. He overcame a difficult childhood and the circumstances of getting married at seventeen. After he enlisted, he provided for his family and the next two decades were marked with the natural difficulties that anyone would expect with such a career—being away from family, going off for long and difficult assignments.

Going beyond those natural difficulties and examining what Peeples lived through must inform the Court's understanding of *who* Matt Peeples is. He's a man who sacrificed much. Reading the PSR and his letter about what he endured while in the service is difficult. The fact that he's 70% disabled from the traumatic brain injuries and PTSD speaks to the realities of what he encountered and its lasting effect. But that's only part of it. The impact of his service on his life can't just be measured in honor or disability percentages, it flows into this crime.

This Court is aware of the impact trauma has on people's choices—particularly criminal behavior. Here, Peeples's endured trauma in two different forms. The trauma he endured as a minor was discussed in his letter and alluded to in the PSR. But that trauma was compounded with the unhealthy ways that he reacted to trauma he experienced in the military. His coping mechanisms were pornography and alcohol. A terrible combination that tragically plagues many service members. In the footnote, there are three studies that document that compulsive sexual behavior is more prevalent for returning service members than the general population.[1] Some experts suggest that there is a "strong relationship between PTSD and compulsive sexual behavior."[2] And as another notes: "[compulsive sexual behavior] may be an important clinical target in its own right, and improving PTSD symptoms may be beneficial for reducing compulsive sexual behavior. It may also be important to address compulsive sexual behavior in the context of PTSD symptoms, if CSB is used as an avoidance coping strategy."[3] One point worth adding is that given Peeples's other trauma, the chances he would engage in such behavior goes up exponentially. As one study noted: "We also found that those with a history of [childhood sexual trauma] had more than 3 times greater odds of CSB than

---

[1] See Steven D. Shirk, Aneeta Saxena, Dongchan Park, & Shane W. Kraus, *Predicting Problematic Pornography use among male returning US Veterans,* 112 Addictive Behaviors 1, 2 (2021), https://www.sciencedirect.com/science/article/pii/S0306460320307772.

[2] Mike Richman, *Study Yields Insight on Sexual Disorder and its Effects on Vets*, Office of Research and Development, U.S. Department of Veterans Affairs (June 7, 2017), https://www.research.va.gov/currents/0617-study_yields_insight_on_sexual_disorder.cfm.

[3] Philip H. Smith et. al., *Compulsive Sexual Behavior Among Male Military Veterans: Prevalence and associated Clinical Factors*, 3(4) J. Behavioral Addictions 214, 220 (December 2014), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4291826/pdf/jba-03-214.pdf.

those without CST. This finding is consistent with previous studies showing high prevalence of CST among those with CSB."[4]

There are two ways of looking at Peeples' decades in the military. The first is that it speaks well of his character and his ability to live a life of service and sacrifice for others—that seems indisputable. The second is that the lasting effects of his military service extends beyond the injuries he sustained and goes to the unhealthy sexual behaviors that led to this crime. Put differently, whether the source of his criminal behavior was the trauma he endured as a child or the trauma he endured as an adult, trauma clearly informs his crime and how the Court has to punish it.

That is not to say that trauma excuses his crime—it doesn't—but it does inform the issue of just punishment. This Court has seen the gamut of criminal cases. There are those who are truly dangerous, and nothing will deter them from future criminal sexual conduct. And there are those who are both truly contrite, who are committed to addressing their underlying criminal thought patterns, and who if given different circumstances would have gotten the preventative treatment required to refrain from criminal misconduct. There are, of course, individuals who fall along that spectrum. But Peeples gives every indication of being among those who are both truly contrite, who are committed to addressing their conduct, and who would not be here if circumstances were different.

To those points, his letter makes clear how contrite he feels about his offense. He is clear about how he dissociated what happened in a chatroom from the harm it wrought on the individual beyond the screen, and it's clear how badly he feels about how his actions harmed the victim. And others around him echo that sentiment:

- I have spent a great deal of time with Matthew in the last several months. I have observed and communicated with him at an extremely close level. The one thing that I can assure you is the grief, shame and sorrow he is experiencing is real and does not come from the situation he put himself in but from the situation he has put the victim and victim's family in. He is extremely sad and regrets what he has done to the very core of his being. He grieves for the victim, the victim's family and for his family who he understands he has disappointed. I have been impressed by his honesty when dealing with his situation. He has been open to his family including his brothers, sister, aunts, uncles and all other family adults. They have all traveled to see Matt and to support him many times over the past months. This family support has been very comforting to both him and I.[5]

---

[4] *Id.*
[5] Letter from Ed Peeples.

Federal Defender Services
 Of Wisconsin, Inc.
Page -4-

- Over the past several months I have had many hours of conversation with him. I can tell you for a fact that he is extremely sorry for what he has done, not because he got caught but because of the hurt he has caused the victim of his case and the pain and grief he has caused to the ones that love him so much. Matt has never tried to make an excuse for his actions. He has told me that he is ashamed of what he has done. He told me that he is working hard to try and figure out how he got to where he could hurt someone the way he did.[6]

- I see someone who realizes the gravity of the situation he is in and wonders how he can fix what he has done. I have witnessed him trying to better himself by attending church. I have seen him constantly reflecting on his choices. I am proud of him for the dedication to his therapy. He has made amends with my husband, children, and I, and has shown remorse for the decisions he has made.[7]

Those words, from those closest to Peeples, reflect a person who knows that his crime has hurt others.

His letter also makes clear that he is committed to getting treatment. But there is so much more than his words, there's also his actions. Upon his release, Peeples immediately got into therapy, and the fruits of that therapy have been profound. As he writes:

- Through therapy, deep reflection, education, and spiritual growth, I have found the strength to be vulnerable and bare my darkest soul. I have begun to understand how my past trauma has affected my addiction cycle and the poor decision making that has led me to breaking the law and hurting so many people. I wish I would have had the strength to ask for help or identify the extent of my traumas before I lost control. I know my recovery journey has just begun and I will need years of therapy, hard boundaries, and supervision to keep moving forward, but I know without a doubt that I can recover and once again positively contribute to society.[8]

---

[6] Letter from Martin Peeples.
[7] Letter from Laura Peeples.
[8] Letter from Matthew Peeples.

Federal Defender Services
    Of Wisconsin, Inc.
Page -5-

    And the letters from those closest to him speak of not just his commitment to therapy but about what that has produced in Peeples. Here are a few passages from the letters addressing those points.

- I observed Matt to immediately seek help both mentally and spiritually. He is very dedicated to getting help and becoming a better person. I have watched him as he has attended church and has asked for God's forgiveness and has prayed for the victim and the victim's family. He has prayed for healing of his soul. He has spent many hours self-reflecting and working on how he got to a place where he would commit this crime and how he can truly heal to not ever go there again. He has undergone counseling over the past several months and I can honestly say that he is taking it very seriously. The work he is doing with the professional is helping him to heal while continuing to be accountable.[9]

- I often accompany him to his therapy sessions, though I don't join in, and we talk about what came up during his session and the different insights he is gaining into what led him to commit this crime. He really is trying to understand and wants to get better, and I and his family are doing our best to support him in this. We are not turning our backs on him, despite the terrible nature of the crime. We know he is worth fighting for, that he is worth redemption.[10]

- Over this past year I have had many opportunities to talk with Matt. I have gone up to Pine where he is currently living and spent hours, days and just recently a week with him. Matt has acknowledged that he needs help and he has taken steps in getting that help. He is driving over 2 hours to a therapist in an effort to start getting the help he needs mentally.[11]

- Since his arrest I can say without a doubt Matt has put full effort in to understanding why he committed this offense. He has been attending weekly therapy sessions, and has been an active member in church. He is remorseful and tearful every time we speak. Matt is committed to therapy to ensure something like this will never happen again.[12]

---

[9] Letter from Ed Peeples.
[10] Letter from Adrian Campbell.
[11] Letter from Reebekah Peeples.
[12] Letter from Rachel Gorman.

F*ederal* D*efender* S*ervices*
    O*f* W*isconsin,* I*nc.*
Page -6-

- I see someone who realizes the gravity of the situation he is in and wonders how he can fix what he has done. I have witnessed him trying to better himself by attending church. I have seen him constantly reflecting on his choices. I am proud of him for the dedication to his therapy. He has made amends with my husband, children, and I, and has shown remorse for the decisions he has made.[13]

Those words, from those closest to Peeples, reflect a person who is truly trying to change.

Beyond the fact that Peeples is contrite and committed to therapy, the other aspect of Peeples's behavior that the Court has to consider is that if circumstances were different, he would not be here. By that, I mean not just that his trauma clearly informs his crime, but also that if he'd sought counseling earlier, this would not have happened. Peeples gives every indication of someone who, had there been an intervention earlier, that this would never have occurred—that he would have seen the need for different coping mechanisms for his PTSD than simply typing away on his smartphone, indulging in bizarre chats about disgusting fetishes involving dogs.

That last point has some nuance to it. There is no question that Peeples's conduct was deplorable and disgusting and it hurt a person. But during his conduct, Peeples did not target the minor, he was not grooming the minor, and he wasn't trying to actually meet the minor. None of those points (again) excuse his conduct, but they do give his conduct context and inform the sentencing calculus.

To be clear, Peeples was in a chatroom dedicated to people interested in bestiality. The platform wasn't targeted to minors—it was targeting those interested in bestiality. He just had the terrible judgment of continuing to chat with the minor after she said she was sixteen. Those who are interested in minors and who are seeking them out are more culpable than those who during their otherwise lawful (though admittedly deviant) sexual interests encounter a minor. Both need to be punished, but those whose interests resides in the minor's age are punished more harshly.

He also wasn't trying to groom the minor into this behavior. Rather, it was clear from the first texts this is what he was into, and Minor A had already produced other videos of this nature *before* meeting Peeples. Here, Peeples didn't groom her. He continued chatting with the minor in the same way he did the other adults in this chatroom. That doesn't make this right or excuse it, but it does mean that Peeples does not deserve the additional punishment that grooming entails because he never acted in such a manner.

---

[13] Letter from Laura Peeples.

Federal Defender Services
    Of Wisconsin, Inc.
Page -7-

      To be clear, none of those points excuse Peeples crime, and the defense isn't asking for a probation sentence. Rather, the points stressed above go to whether Peeples's conduct has to be punished with a sentence in excess of a decade in prison. Here, the Court has someone who has demonstrated his contrition. The Court has someone who is committed to therapy. And the Court has someone who would not be here if he'd have sought and received treatment for his PTSD and the way he was coping with it. Not only that, the Court has someone who was not actively targeting minors, but who exercised terrible judgment in continuing to chat with the minor once she said her age. All of that is criminal and all of that is more than adequately punished with a sentence of ten years.

                Sincerely,

                */s/ Joseph A. Bugni*

                Joseph A. Bugni
                Associate Federal Defender